```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

|  |  |
|---|---|
| **ESSEX INSURANCE COMPANY,**   ) | |
|                              ) | |
|         **Plaintiff,**        ) | |
|                              ) | **Civil Action No. 04-1460 (GK)** |
|         **v.**               ) | |
|                              ) | |
| **ASSOCIATES FOR RENEWAL IN** ) | |
| **EDUCATION, INC.**, <u>et al.</u>, ) | |
|                              ) | |
|         **Defendants.**       ) | |

## MEMORANDUM OPINION

Plaintiff Essex Insurance Company ("Essex") brings this common law action against Defendants Associates for Renewal in Education ("ARE") and John Doe, a minor, through his next friend Bob Doe, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Essex seeks a declaratory judgment clarifying several provisions contained in the liability insurance policy it issued to ARE in 2001.

This matter is before the Court on Defendant Doe's Motion for Partial Summary Judgment [#31] and Plaintiff's Amended Motion for Summary Judgment [#44]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Defendant Doe's Motion for Partial Summary Judgment is **denied** and Plaintiff's Amended Motion for Summary Judgment is **granted in part and denied in part.**

**I. BACKGROUND**

    **A.   Facts**

Plaintiff is an insurance company incorporated under Virginia law and with its principal place of business in that state. Compl. ¶ 2. On August 23, 2001, it issued Commercial General Liability Policy 2CD 4003 ("Policy") to Defendant ARE, a District of Columbia corporation that operates residential care facilities under contracts with the D.C. government, including a facility known as Columbia House II. Pl.'s Statement of Undisputed Material Facts ¶ 1; Compl. ¶ 3.

The Policy ran from August 23, 2001 through August 23, 2002 and included general liability coverage up to an aggregate limit of $2 million, subject to numerous terms and conditions including a Sexual Abuse and/or Misconduct Limitation Endorsement ("Sublimit Endorsement"). Pl.'s Statement of Undisputed Material Facts ¶¶ 1-3. In relevant part, the Sublimit Endorsement reads:

> THIS ENDORSEMENT CHANGES THE POLICY.
>
> In consideration of the premium charged, this endorsement will provide limited coverage under COMMERCIAL GENERAL LIABILITY claims made against you, caused by one of your employees . . . alleging injury or damages arising out of SEXUAL ABUSE OR MISCONDUCT which is caused by or contributed to by your failure to
>
>     1.   Properly train, hire, or supervise any employee; or
>     2.   Properly control, monitor, or supervise the treatment and care of the person whose care has been entrusted to you.
>               SUBLIMIT OF LIABILITY
>               Each claim limit:   $100,000

                              Aggregate limit:    $300,000

Id. ¶¶ 3-4 (emphasis in original).

The Sublimit Endorsement contains a lengthy and seemingly comprehensive definition of "Sexual Abuse and/or Misconduct." Id. ¶ 5. It further provides that:

> The sublimit of liability shown in this endorsement is the most we will pay for all damages including investigation and defense because of injury arising out of any one claim for SEXUAL ABUSE AND/OR MISCONDUCT in any "policy year." If our limits are tendered or exhausted heron under this endorsement, we will not defend or continue to defend any suit.

Id. ¶ 6 (emphasis in original). Such language is often included in policies issued by Essex to residential care facilities, although the ARE Policy includes coverage amounts significantly higher than those contained in similar policies. See Pl.'s Am. Mot. for Summ. J. at 4.

The Policy includes provisions that restrict ARE's power to settle any claims or assign its rights without the consent of Essex. Specifically, the "consent clause" provides that "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense . . . without our consent." Id., Ex. A, Essex Insurance Commercial General Liability Policy 2CD 4003 (hereinafter "Policy") ¶ G. Likewise, the anti-assignment clause states that "[ARE's] rights and duties under this policy may not be transferred without [Essex's] written consent." Id., § IV, Commercial General Liability Conditions.

On August 22, 2003, John Doe filed suit against several Defendants, including ARE, in this Court. See Doe v. District of Columbia et al., No. 03-cv-1789 (D.D.C. filed Aug. 22, 2003) ("underlying lawsuit"). Doe alleged that he had been sexually assaulted numerous times while a resident of Columbia House II for approximately 12 days in April 2002. See Def.'s Mot. for Partial Summ. J. at 3. With respect to ARE, Doe argued that the company and its employees: (1) improperly accepted him as a resident of Columbia House II when, at seven years old, he was below the District of Columbia's minimum age for placement in a group home; (2) negligently failed to protect him from sexual abuse by older residents of the facility; and (3) unlawfully neglected to report his allegations of sexual abuse to D.C. authorities in a timely manner. See Doe v. District of Columbia et al., No. 03-cv-1789, Compl. ¶¶ 34-51. Essex provided ARE with a defense in the underlying lawsuit pursuant to the Sublimit Endorsement. See Pl.'s Am. Statement of Material Facts ¶ 11.

Before instituting this action, Essex offered the full amount available under the Sublimit Endorsement to settle Doe's claim against ARE. Id. ¶ 13. According to Essex, that amount equaled the per-claim liability limit of $100,000 reduced by the costs already expended in ARE's defense which, at the time of the offer,

were $50,000.[1]  See Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. at 11.  Doe rejected that offer.  On June 23, 2005, without Essex's consent, ARE and Doe entered into a settlement agreement totaling $450,000 and in which ARE assigned its rights in the Policy to Doe.  See Pl.'s Am. Statement of Material Facts ¶ 14.  As part of that settlement, ARE promised to cooperate with Doe in his efforts to recover the Policy proceeds from Essex.  Id. ¶ 15.

**B.  Procedural History**

Essex instituted this action against ARE and Doe on August 27, 2004.  Claiming that Doe's interpretation of the Policy, as revealed in settlement negotiations, is "contrary to the language of the Sublimit Endorsement," Essex seeks declaratory judgment from this Court.[2]  Compl. ¶ 20.  In particular, Essex requests a declaration that: (1) the "underlying lawsuit constitutes a single claim against ARE;" (2) the "Sublimit Endorsement's $100,000 per

---

[1]  Essex represents that as of the time of filing its Motion, the full Policy limits of $100,000 have been expended on defending the underlying lawsuit.  See Pl.'s Am. Mot. for Summ. J. at 3.

[2]  Throughout the briefing that accompanied the instant Motion, Essex argues that because Doe is not a party to the Policy, the Court should not even consider his interpretation of it.  See, e.g., Pl.'s Am. Mot. for Summ. J. at 9 ("As a third party and stranger to the contract, Doe has no standing to say what the policy means nor to declare it ambiguous where the two parties . . . have a shared understanding of its meaning.").  That argument is at odds with Essex's Complaint.  By seeking declaratory judgment to correct what it argues is Doe's mistaken interpretation of the Policy, and by joining Doe as a Defendant, Essex has given Doe a right to be heard in this matter.  Moreover, as an assignee and third-party beneficiary of the Policy, Doe clearly has a right to be heard.

claim sublimit" applies to the underlying lawsuit; and (3) the limits of liability under the Policy "are reduced by the costs of investigating and defending the claim and the underlying lawsuit." Id. at 6-7.

On July 12, 2005, ARE and Essex filed Cross Motions for Summary Judgment. Both Motions address the central issues presented in this case – whether the underlying lawsuit constitutes one claim against ARE, whether the Sublimit Endorsement of $100,000 applies, and whether the Policy proceeds are reduced by the costs Essex has expended in ARE's defense – and each party argues that judgment in its favor is appropriate as a matter of law. See Def.'s Mot. for Partial Summ. J. at 2; Pl's Mot. for Summ. J. at 1.

At the time Essex filed its Motion for Summary Judgment, it appeared to be in agreement with ARE on the coverage issues. After ARE disclosed that it had settled with Doe, however, ARE received leave of the Court to file an Amended Answer. See Minute Order Granting Def.'s Mot. for Leave to File Am. Answer (Aug. 4, 2005). In its Amended Answer, ARE changes some of its responses to the Complaint but continued to express agreement, in general, with Essex's interpretation of the Policy.[3] See Pl.'s Am. Answer ¶¶ 7-

---

[3] Although ARE's Amended Answer obscures some of the direct admissions contained in its first Answer, it does not reject Essex's interpretation of the Policy altogether. See, e.g., Pl.'s Am. Mot. for Summ. J. at 2. Instead, ARE takes the position that it is "caught in the middle between Essex's and Doe's interpretations of the legal provisions of [the Policy]," but that
(continued...)

11, 20-21.  On September 30, 2005, also with leave of the Court, Essex filed the instant Amended Motion for Summary Judgment.  This Motion raises all the issues contained in Essex's July 12, 2005 Motion for Summary Judgment and also requests summary judgment on an additional issue: whether the settlement between ARE and Doe is valid.

**II. STANDARD OF REVIEW**

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there

---

³(...continued)
it "continues to believe that the coverage features of ARE's insurance are as Essex interprets them."  See Def.'s Am. Answer ¶¶ 5,8.

is a genuine issue for trial.'" Id. at 324. See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty to provide enough evidence that a "reasonable jury could return a verdict" in its favor); see also Bias v. Advantage Intern., Inc., 905 F.2d 1558, 1561 (D.C. Cir. 1990) ("The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts . . . [it] must come forward with 'specific facts showing that there is a genuine issue for trial.'" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986))).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Washington Post Co. v. U.S. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**III. Analysis**

    **A.  The Underlying Lawsuit Constitutes One Claim Against ARE.**

The parties agree that the Sublimit Endorsement governs any claim Doe, as assignee of ARE's rights under the Policy, might make

against Essex arising from the underlying lawsuit.  Accordingly, Essex's potential liability to Doe is limited to $100,000 per claim or $300,000 in the aggregate.  See Pl.'s Statement of Undisputed Material Facts ¶¶ 3-4.  Essex and Doe part ways, however, over precisely which of those limits applies. Their disagreement turns on differing definitions of the term "claim."

Doe argues that because he was sexually assaulted at least four times by four different people, "each time [he] was attacked by a different person, a different claim arose." Def.'s Mot. for Partial Summ. J. at 11.  On that basis, Doe asserts that he has stated several claims against ARE and consequently that the $300,000 aggregate limit applies.  Essex counters that regardless of how many "separate acts of negligence . . . and incidents of abuse" occurred, Doe "has nevertheless asserted only a single claim for liability against ARE" and thus the $100,000 per-claim limit applies.  See Pl.'s Am. Mot. for Summ. J. at 15.  The Policy does not define the term "claim."

Under District of Columbia law, unless "it is obvious that the terms used in an insurance contract are intended to be used in a technical connotation," courts must interpret such terms "consistently with the meaning which common speech imports." In re Corriea, 719 A.2d 1234, 1239 (D.C. 1998) (internal citation omitted).  If a true ambiguity exists, all doubts must be resolved in favor of the insured.  Cameron v. USAA Property and Cas. Ins.

Co., 733 A.2d 965, 968 (D.C. 1999). An ambiguity does not arise, however, "merely because the parties do not agree on the interpretation of the contract provision in question." Byrd v. Allstate Ins. Co., 622 A.2d 691, 694 (D.C. 1993) (internal citation omitted). Nor does the "mere absence of a policy definition . . . rende[r] the policy or term ambiguous." Carey Canada, Inc. v. Columbia Casualty Co., 940 F.2d 1548, 1556 (D.C. Cir. 1991).

There is no evidence that the parties used the term "claim" in a technical fashion or with a "technical connotation." Throughout the Policy, terms to which a specialized meaning is attached are indicated by quotation marks. Examples include "occurrence," "personal injury," and "suit." See Policy § V, Definitions. The meaning given to each of those terms is specified in an extensive list of definitions contained within the Policy itself.

While the term "claim" appears numerous times in the Policy, it is never accompanied by quotation marks and is not included in the "Definitions" section. Given that the Policy goes to such great lengths to define its technical terms, the lack of a specific definition for "claim" suggests that the parties intended it to have its common meaning and nothing more. That meaning must guide the Court's interpretation. See In re Corriea, 719 A.2d at 1739.

The District of Columbia Court of Appeals has interpreted the word "claim" as having "a plain meaning synonymous with a cause of action under an insurance policy." Zhou v. Jennifer Mall

-10-

Restaurant, Inc. et al., 699 A.2d 348, 353 (D.C. 1997). That definition comports with the meaning other courts have given the term. See, e.g., Windham Solid Waste Management Dist. v. Nat'l Cas. Co., 146 F.3d 131, 133-34 (2d Cir. 1998) ("[T]he plain and ordinary meaning of 'claim' is 'a demand for specific relief owed because of alleged wrongdoing.'") (citation omitted); MGIC Indem. Corp. v. Home State Sav. Ass'n, 797 F.2d 285, 288 (6th Cir. 1986) (arguing that the term "claim" in an insurance policy speaks "not of a claim that wrongdoing occurred, but [of] a claim for some discrete amount of money owed . . . on account of the alleged wrongdoing."); Home Ins. Co. of Ill. v. Spectrum Info. Tech., Inc., 930 F. Supp. 825, 846 (E.D.N.Y. 1996) ("Courts have found that the term 'claim' as used in liability insurance policies is unambiguous and generally means a demand by a third party against the insured for money damages or other relief owed.'" (internal citation omitted)).

Commonly-used dictionaries offer similar definitions. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, for instance, defines "claim" as "a demand as of right or supposed right" or "a demand for compensation, benefits, or payment." See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Unabridged) (Phillip Babcock Gove ed., 2002). Likewise, BLACK'S LAW DICTIONARY gives the following definition: "the aggregate of operative facts giving rise to a right enforceable by law." See BLACK'S LAW DICTIONARY (8th ed. 2004). Each of these

definitions suggests that the term "claim" has essentially the same meaning as "cause of action." See id. (defining "cause of action" as "a group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another; claim").

The case law and the dictionaries make clear that in this context the term "claim," like its synonym "cause of action," carries a meaning broader than Doe's definition suggests. A "claim" is not a particular injury that one party uses as a discrete ground for suing another party. It is instead a "group of operative facts" or a "factual situation" that gives rise to a demand for relief. See BLACK'S LAW DICTIONARY, (8th ed. 2004). One claim can thus comprise numerous injuries.

Accordingly, what matters in this case is not the number of <u>injuries</u> Doe sustained while in ARE's care but the number of legal <u>remedies</u> he has against Essex. Even while Doe alleges that he suffered individual instances of sexual assault at different times, he has only one avenue for seeking relief from Essex: his ongoing attempt to recover funds pursuant to ARE's Policy. For purposes of the Sublimit Endorsement, therefore, the underlying lawsuit constitutes one claim and the $100,000 per-claim limit must apply.

  **B.**  **The Costs Essex Has Incurred in Defense of ARE Reduce the Limit of Liability Available Under the Sublimit Endorsement.**

The Sublimit Endorsement provides that its limit of liability "is the most [Essex] will pay for all damages including investigation and defense because of injury arising out of any one claim for SEXUAL ABUSE AND/OR MISCONDUCT in any 'policy year.'" Pl.'s Statement of Undisputed Material Facts ¶ 6 (emphasis in original).  As they did with the term "claim," the parties attach very different meanings to the phrase "all damages including investigation and defense."

Essex argues that any money it expends defending a claim covered by the Sublimit Endorsement "reduce[s] the limits of liability" available under the Policy.  Pl.'s Mot. for Summ. J. at 18.  Under this view, the amount Essex spends defending a claim must be subtracted from the total amount that would otherwise be available to the claimant.  Applied to the instant case, if Doe were successful in his claim, and became entitled to $100,000 under the Sublimit Endorsement, his net recovery would be that amount less the attorneys' fees and other costs Essex has already expended in this case.  See id.

Doe takes a contrary position.  If defense costs reduce the total amount available under the Sublimit Endorsement, he argues, the relevant provision would state that Essex will pay for "all damages <u>and</u> investigation and defense costs." See Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 18 (emphasis in original).  According to Doe, the formulation in the actual policy – "'[Essex] will pay for

all damages <u>including</u> investigation and defense'" – "makes 'investigation and defense' a subset of damages." <u>Id.</u> (emphasis in original). In other words, Doe argues that attorneys' fees and costs reduce a claimant's recovery "only in cases where [such costs] are elements of damages" which Essex is "legally obligated to pay." <u>Id.</u> Unless there has first been a finding of liability and an order to pay damages, Doe argues that Essex cannot subtract its costs from the amount available under ARE's Policy.

As already noted, courts applying District of Columbia law interpret words in an insurance contract according to "the meaning which common speech imports" unless a technical meaning is clearly intended. <u>In re Corriea</u>, 719 A.2d at 1239; <u>see also</u> <u>Chase v. State Farm Fire and Cas. Co.</u>, 780 A.2d 1123, 1127 (D.C. 2001). And while reasonable doubts are to be resolved in favor of the insured, courts may not "indulge in 'forced constructions to create an obligation against the insurer.'" <u>Cameron</u>, 733 A.2d at 968 (quoting <u>Boggs v. Motors Ins. Corp.</u>, 139 A.2d 733, 735 (D.C. 1958)).

The dispute turns on two purely semantic issues: first, what meaning attaches to the conjunction "including" as it appears between the terms "damages" and "investigation and defense costs" in the Sublimit Endorsement;" and second, whether the term "damages" must refer to a court-ordered payment after an adjudication of liability. Because no technical terms are

involved, the Court must give the Policy the "meaning which common speech imports." In re Correia, 719 A.2d at 1239.

"Including" is anything but a legalistic word and does not carry a specialized meaning. According to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, it means "serving to enclose or comprise as a . . . part or item of a larger aggregate." See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Unabridged) (Phillip Babcock Gove ed., 2002). Likewise, WEBSTER'S NEW COLLEGIATE DICTIONARY defines it as "to take in or comprise as a part of a whole." See WEBSTER'S NEW COLLEGIATE DICTIONARY (Frederick C. Mish ed., 1996).

Doe's argument comports with the dictionary definition in at least one sense. If "including" means serving to enclose something within a larger aggregate, the sentence "the sublimit of liability . . . is the most [Essex] will pay for all damages including investigation and defense" does make Essex's costs "a subset of damages." Def.'s Opp'n to Pl.'s Am. Mot. for Summ. J. at 18. The problem with Doe's argument, however, is that it presupposes a definition for the term "damages" that does not appear in the Policy and that is inconsistent with it.

According to Doe, the costs of defense and investigation only reduce the Policy limits if Essex must pay "damages." That term, he argues, means "monies . . . that the policyholder is legally obligated to pay," following an adjudication of liability. Id. Doe's interpretation presumes that the Sublimit Endorsement uses

the word "damages" in its technical, legal connotation: "money claimed by, or ordered to be paid to, a person as compensation for loss or injury."  BLACK'S LAW DICTIONARY, (8th ed. 2004) (emphasis added).  But the Policy includes no special definition for "damages" and the word is not accompanied by the quotation marks that indicate other specialized terms in the document.  As a result, the technical definition lawyers give to the term does not control.  See In re Correia, 719 A.2d at 1239.

The common definition of "damages" is broader than what Doe suggests.  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defines it as "the estimated reparation in money for detriment or injuries sustained" and lists as its synonyms "expense," "cost," "charge," and "injury."  See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Unabridged) (Phillip Babcock Gove ed., 2002).  The term denotes an obligation to pay a "reparation" or "expense," but that obligation does not necessarily arise from an adjudication of liability.  The meaning Doe attributes to the term is simply too narrow.

Furthermore, the Sublimit Endorsement uses the term in ways wholly inconsistent with Doe's interpretation.[4]  "Damages" also appears just before the sentence on which the parties have focused.  In its preamble, the Sublimit Endorsement explains that "this

---

[4] The term "damages" appears throughout the Policy in ways that imply its broad, non-technical definition.  Because the Sublimit Endorsement governs Doe's claim against the Policy, however, only the use of "damages" in that provision is immediately relevant here.

endorsement will provide limited coverage . . . [for] claims made against you . . . alleging injury or damages arising out of SEXUAL ABUSE OR MISCONDUCT." Pl.'s Statement of Undisputed Material Facts §§ 3-4 (emphasis in original). In this instance, "damages" appears in a phrase that includes the word "alleging." If, as Doe maintains, the Sublimit Endorsement uses "damages" to refer only to court-ordered payments, this phrase would be meaningless. By modifying "damages" with the verb "<u>alleging</u>," it suggests that "damages" embraces more than a court's award of compensation after a formal finding of liability: any claim for payment under the Policy, including one merely "alleging" "damages," seems to qualify.

Thus even if the Sublimit Endorsement does make investigation and defense costs a "subset of damages," Doe incorrectly concludes that Essex's costs cannot reduce the amount available to him. The Policy uses the term "damages" in a much broader sense than he admits. Whenever an allegation arises that ARE is liable for sexual abuse or misconduct, the Sublimit Endorsement allows Essex to subtract the costs it incurs investigating and defending such claims from the amount otherwise available.

If the Court is to avoid "forced constructions" of the Policy and to interpret its words as carrying their common meaning, it must read the phrase "all damages including investigation and defense" to mean that Essex's costs to date reduce the Policy

-17-

proceeds available to Doe. See Cameron, 933 A.2d at 968. Summary judgment on this issue must, therefore, be granted in favor of Essex.

### C. The Issue of Whether Essex Must Honor the Settlement Between ARE and Doe Is Moot.

The final issue Essex raises is whether ARE's June 23, 2005 settlement with Doe is valid under the terms of the Policy.[5] The settlement agreement entitles Doe to $450,000 but provides that he will be assigned ARE's rights in the Policy in full satisfaction of his claims. See Doe v. District of Columbia et al., 03-cv-1789, Joint Mot. for Approval of Settlement [#218]. Essex attacks that agreement as violating its right to consent to any settlement or assignment. See Pl.'s Am. Mot. for Summ. J. at 8, 11.

The Policy's "consent clause" provides that ARE cannot, without Essex's consent, "voluntarily make a payment, assume any obligation, or incur any expense" related to a claim against the Policy. See Policy § IV, Commercial General Liability Conditions. Likewise, the "anti-assignment clause" provides that ARE's "rights

---

[5] At a Status Conference in the underlying lawsuit held on October 6, 2005, the Court approved the settlement between Doe and ARE, subject to certain conditions that were noted on the record and that are not relevant here. In that case, the governing standard was whether the settlement agreement was in Doe's best interests. See Godfrey v. Washington, 653 A.2d 371, 373 (D.C. 1995). Because ARE represented that it was in danger of becoming insolvent, the settlement probably represented Doe's only opportunity to recover from ARE; thus there was no question that it was in his best interests. The instant Motion, however, presents a very different issue: whether ARE's settlement with Doe is valid under the Policy such that Essex is bound to honor it.

and duties . . . cannot be transferred without [Essex's] written consent." Id. ¶ G, Common Policy Conditions. According to Essex, these clauses provide conclusive evidence that ARE improperly settled with Doe: the Policy prohibited ARE from settling a claim or assigning its rights without Essex's consent, ARE did just that, therefore the settlement must be invalid. Doe disputes this interpretation.

The Court has already held that the underlying lawsuit constitutes one claim against ARE, and therefore that Essex's liability is limited to $100,000. Moreover, the Court has held that the costs Essex has incurred defending ARE in the underlying lawsuit reduce its liability pursuant to the Sublimit Endorsement. As a result, because Doe has accepted ARE's rights in the Policy in full satisfaction of his claims, and Essex has already expended the full $100,000 for which it is liable to ARE, there is no possibility that Doe can recover anything more from Essex. Whether or not Essex is bound to honor the settlement between Doe and ARE is, therefore, no longer a live issue in this case.

Accordingly, as to the validity of the settlement between Doe and ARE, Essex's Motion for Summary Judgment must be denied as moot.

**IV. CONCLUSION**

Accordingly, for the foregoing reasons, Defendant's Motion for Partial Summary Judgment [#31] is **denied** and Plaintiff's Amended

Motion for Summary Judgment [#44] is **granted in part and denied in part.**

An Order will issue with this Memorandum Opinion.


August 30, 2006              ____/s/_____
                             Gladys Kessler
                             U.S. District Judge


**Copies to: attorneys on record via ECF**